**FILED**

SEP **1 0** 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1
2
3
4
5
6
7

8             UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

11   ARIEL SHUCKETT, individually and on       Case No.: 17cv2073-LAB(KSC)
     behalf of all others similarly situated,
12
                    Plaintiff,               **ORDER RE JOINT MOTION FOR**
13                                           **DETERMINATION OF DISCOVERY**
     v.                                      **DISPUTE (RE: PLAINTIFF'S FIRST**
14                                           **SET OF WRITTEN DISCOVERY**
     DIALAMERICA MARKETING, INC.;            **REQUESTS)**
15   and AMERICAN STANDARD
16   BRANDS, d/b/a AMERICAN
     STANDARD BATHROOM AND
17   KITCHEN FIXTURES,                       **[Doc. No. 39.]**
18                  Defendants.
19

20

21

22          Before the Court is the parties' Joint Motion for Determination of Discovery

23   Dispute. [Doc. No. 39.] In the Joint Motion, plaintiff seeks an order compelling defendant

24   DialAmerica Marketing Inc. ("DialAmerica") to provide further, substantive responses to

25   certain document requests and special interrogatories. DialAmerica objects to these written

26   discovery requests on various grounds and has declined to provide plaintiff with more

27   substantive responses. [Doc. No. 39, at pp. 6-50.] For the reasons outlined more fully

28   below, the Court finds that plaintiff's request for an order compelling DialAmerica to

                                            1

provide further responses to certain document requests and special interrogatories must be GRANTED in part and DENIED in part.

### *Background*

The original class action Complaint was filed on October 9, 2017 against DialAmerica. [Doc. No. 1.] Plaintiff then filed a First Amended Complaint on October 24, 2017. [Doc. No. 9.] Recently, on July 11, 2018, the District Court granted plaintiff leave to amend the First Amended Complaint to add a new defendant: American Standard Brands, doing business as American Standard Bathroom and Kitchen Fixtures ("American Standard"). [Doc. No. 30-1, at pp. 1-7; Doc. No. 41; Doc. No. 42.] The Second Amended Complaint adding defendant American Standard was filed on July 12, 2018. [Doc. No. 42.] Defendant American Standard filed an Answer to the Second Amended Complaint on August 14, 2018. [Doc. No. 51.]

The Second Amended Complaint includes two causes of action for negligent and willful violations of the Telephone Consumer Protection Act ("TCPA"). [Doc. No. 42, at pp. 2, 11-12.] According to the Ninth Circuit in *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012), the elements of a TCPA claim are that: (1) the defendant called a cellular telephone; (2) the call was made with an automatic telephone dialing system ("ATDS"); and (3) the recipient of the call did not give prior express consent. *Id.* at 1043. However, the *Meyer* case was decided in the context of a motion for preliminary injunction (*id.* at 1040), and the Ninth Circuit later stated in *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017), that "prior express consent is an affirmative defense, not an element of a TCPA claim." *Id.* at 1044 n.3.

In the Second Amended Complaint, plaintiff alleges that DialAmerica is a telemarketing company that provides call center services to a variety of industries, including American Standard, and "regularly makes autodialed telephone calls to consumers in order to market products. . . ." [Doc. No. 42, at pp. 4-8.] Between July 2017 and August 2017, plaintiff alleges that defendants initiated repeated and unauthorized telephone calls to her cellular telephone using a pre-recorded voice and an

ATDS. [Doc. No. 42, at p. 4.] Within this two-month time period, and on October 10, 2017, after this lawsuit was filed, plaintiff claims that defendants initiated about forty (40) calls to her cellular telephone. [Doc. No. 42, at p. 5.] When the call was answered, plaintiff alleges there was a pre-recorded, robotic message and no live representative was on the line. [Doc. No. 42, at p. 5.] On three different occasions, plaintiff was able to get through to a representative and asked for the calls to stop, but the calls continued. [Doc. No. 42, at p. 5.] On some unspecified date, plaintiff alleges she was connected to a representative for American Standard, who confirmed that the call was initiated by DialAmerica. [Doc. No. 42, at p. 5.] Plaintiff further alleges that she did not consent to be called on her cellular telephone by defendants for marketing or any other purpose, and she incurs a charge for incoming calls. [Doc. No. 42, at pp. 6-7.]

Defendant DialAmerica's version of the facts is markedly different from the allegations in the Second Amended Complaint. DialAmerica believes that it has erroneously been named as a party in this action. [Doc. No. 39, at p. 4.] In connection with the Joint Motion and at other times during this action, DialAmerica has represented based on its call records that it only called plaintiff once on October 10, 2017, and plaintiff did not answer the call. If she did answer the call, DialAmerica represents that a live DialAmerica employee would have been on the line, because DialAmerica does not use pre-recorded voice calls for marketing purposes. [Doc. No. 39, at p. 4.]

With the Joint Motion, DialAmerica submitted a supporting Declaration by its general counsel and a redacted copy of its service agreement with American Standard. [Doc. No. 39-2, at pp. 1-7.] This agreement was fully executed as of May 23, 2016 [Doc. No. 39-2, at p. 7] and states that DialAmerica "will provide American Standard with an outbound telemarketing program with the purpose of generating qualified leads for their walk-in tub product line. For phase one of the pilot program, DialAmerica will be calling warm leads from American Standard's database. For phase two of the pilot program, Dial America will be calling cold leads. [¶]American Standard has agreed to a 500 hour test with DialAmerica. Upon completion of the test American Standard has the option to

3

continue with DialAmerica under this agreement or to terminate the agreement." [Doc. No. 39-2, at p. 5.] The start time for this project was "two weeks after DialAmerica has received the [call] list. . . ." [Doc. No. 39-2, at p. 5.]

The agreement also states that: "Qualified leads will be warm transferred to American Standard call center agents in real time." [Doc. No. 39-2, at p. 5.] Under the agreement, "American Standard [is required] to remove all customers that are on American Standard's internal Do Not Call List" and to "identify on the leads if the customer provided express written consent to be contacted on their primary phone number." [Doc. No. 39-2, at p. 5.]

In connection with this agreement, DialAmerica represents that it received plaintiff's telephone number from American Standard "as a lead obtained with prior written consent" on September 21, 2017. [Doc. No. 39, at p. 5.] Previously, in connection with its Limited Opposition to plaintiff's Motion for Leave to File a Second Amended Complaint, defendant provided plaintiff and the Court with a copy of a report from its archives showing a single call to plaintiff's telephone number on October 10, 2017 with zero "talk time" and a copy of its "Do-Not-Call Policy." [Doc. No. 35-1, at p. 2; Doc. No. 35-2, at p. 2.] Based on these documents, DialAmerica states that plaintiff never spoke to an employee of DialAmerica, and if the single call made to plaintiff's cellular telephone was made after a "do-not-call" request, it was made as the result of an error. [Doc. No. 39, at p. 4.]

## *Discussion*

## *I.    Scope of Discovery.*

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

/ / /

discovery in resolving the issues and whether the burden or expense of the proposed

discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1).

If a party fails to answer written interrogatories or produce documents in response

to written requests, the party seeking discovery may move for an order compelling

disclosure. Fed.R.Civ.P. 37(a)(3)&(4). "While the party seeking to compel discovery

has the burden of establishing that its request satisfies relevancy requirements, the party

opposing discovery bears the burden of showing that discovery should not be allowed,

and of clarifying, explaining, and supporting its objections with competent evidence."

*Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015).

Under Rule 26(b)(2)(C), "the court must limit . . . discovery . . . if it determines

that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be

obtained from some other source that is more convenient, less burdensome, or less

expensive; . . . or (iii) the proposed discovery is outside the scope permitted by Rule

26(b)(1)." Fed.R.Civ.P. 26(b)(2)(C)(i)&(ii). In addition, "[t]he court may, for good

cause, issue an order to protect a party or person from annoyance, embarrassment,

oppression, or undue burden or expense, including . . . (A) forbidding the disclosure or

discovery; . . . (C) prescribing a discovery method other than the one selected by the

party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope

of the disclosure or discovery to certain matters; . . . (G) requiring that a trade secret or

other confidential research, development, or commercial information not be revealed or

be revealed only in a specified way. . . ." Fed.R.Civ.P. 26(C)(1)(A)-(G).

## II.   *Outbound Dial Lists.*

In the Joint Motion, plaintiff represents that the documents sought in response to

Document Request Nos. 9, 10, 11 and 13 are generally referred to as "outbound dial

lists." [Doc. No. 39, at p. 7.] According to plaintiff, these "outbound dial lists"

ordinarily "identify the telephone numbers called as well as the date and time, and may

also include call treatment such as whether the call was answered, a voice message was

left, and length of the call." [Doc. No. 39, at p. 7.] In pertinent part, the disputed document requests read as follows:

**_Plaintiff's Document Request No. 9_** broadly seeks production of:

"[A]ny and all documents relating to or regarding, and including, any and all reports for each outbound dial list to persons that [DialAmerica] called on behalf of [DialAmerica] and/or any third party, including those outbound dial lists, in electronically searchable format, utilizing an autodialer since four years prior to the filing of this action to the date of responding to these document requests." [Doc. No. 39, at p. 6.]

**_Plaintiff's Document Request No. 10_** broadly seeks production of:

"[A]ny and all documents relating to or regarding, and including, any and all reports for each outbound dial list to persons that [DialAmerica] called on behalf of [DialAmerica] and/or any third party, including those outbound dial lists, in electronically searchable format, generated by any predictive dialer campaign in which [DialAmerica] engaged in since four year prior to the filing of this action to the date of responding to these document requests." [Doc. No. 39, at p. 13.]

**_Plaintiff's Document Request No. 11_** broadly seeks production of:

"[D]ocuments relating to or regarding, and including, the outbound dial list to persons that [DialAmerica] called for and on behalf of [DialAmerica] and/or any third party, including those outbound dial lists, in electronically searchable format, for any autodialer marketing and/or advertising campaign in which [DialAmerica] [was] engaged since four years prior to the filing of this action to the date of responding to these document requests." [Doc. No. 39, at p. 14.]

**_Plaintiff's Document Request No. 13_** broadly seeks production of:

"[D]ocuments relating to or regarding and including, all reports in electronically searchable format of autodialer or predictive dialer calls made by [DialAmerica] or any of [DialAmerica's] employees, agents or independent contractors, or other persons or entities working on [DialAmerica's] behalf, to pagers, cellular telephones, mobile telephones, or wireless devices of persons [DialAmerica] called on behalf of [DialAmerica] and/or any third party since four years prior to the filing of

6

this action to the date of responding to these document requests." [Doc. No. 39, at pp. 14-15.]

Defendant objected to Document Request Nos. 9, 10, 11, and 13 on various grounds and did not provide any substantive responses. A party responding to a document request "must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. . . ." Fed.R.Civ.P. 34(b)(2)(B). "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed.R.Civ.P. 34(b)(2)(B).

Defendant's responses to Document Request Nos. 9, 10, 11, and 13 are deficient under Federal Rule 34(b)(2)(B) and (C), because they include only general, boilerplate objections with no reasons. In addition, defendant's responses do not state whether any responsive materials are being withheld based on these objections. Nor do DialAmerica's responses provide any specificity as to the part or parts of the requests that are objectionable. Despite the requirements in Federal Rule 34(b)(B) and (C), DialAmerica did not state in any of its responses whether it would make a partial production. For these reasons alone, the Court finds that plaintiff is entitled to an order requiring DialAmerica to provide further, substantive responses to Document Request Nos. 9, 10, 11, and 13.

In the Joint Motion, plaintiff argues in conclusory fashion that the broad expanse of documents sought in response to Request Nos. 9, 10, 11, and 13 are "necessary" to determine the class issues of numerosity, commonality, and predominance. [Doc. No. 39, at pp. 7-8.] In support of the argument, plaintiff cites several unpublished District Court decisions. These cases indicate that "outbound dial lists" may be relevant to the class issues of numerosity and commonality in lawsuits involving alleged violations of the TCPA. [Doc. No. 39, at p. 8.]

First, plaintiff cites *Knutson v. Schwan's Home Serv. Inc.*, No. 12cv964-GPC(DHB), 2013 WL 3746118 (S.D. Cal. 2013), a class action involving alleged violations of the TCPA by a grocery delivery service who made deliveries on its own behalf and on behalf of a client, NutriSystem. If deliveries were not on schedule, the defendant would notify customers by telephone using an automated dialing system. *Id.* at 1. During class discovery, plaintiffs sought an order compelling production of "a comprehensive outbound call list" from the defendant and "a NutriSystem only call list." *Id.* While the discovery motion was still pending, the plaintiff filed a motion seeking certification of a class of "only NutriSystem customers" who received calls. *Id.* at 2.

The plaintiff argued that it was entitled to production of the defendant's call lists, because they were relevant to the class certification issues of commonality, predominance, typicality, and ascertainability.[1] *Id.* at 1-2. The District Court concluded the call lists were not relevant to the issues of ascertainability or typicality but could be relevant to the issue of commonality. *Id.* at 6-8. To establish commonality in a case involving alleged violations of the TCPA, the District Court in *Knutson v. Schwan's* noted that the test "is not whether common questions exist, but whether common answers to critical questions of law and fact can be reached without impediment." *Id.* at 7. A common question in the case was whether individuals were all called by or on behalf of the defendant without their consent on their cellular telephones with the use of an autodialer. *Id.* at 8. Thus, the District Court concluded that "[a] list of numbers dialed by an autodialer on behalf of [the defendant] for a singular purpose could be relevant to this inquiry, especially since plaintiffs claim the cell phone numbers can be reliably identified within the list and used in conjunction with evidence of lack of consent." *Id.* However,

---

[1] The plaintiff in *Knutson v. Schwan's* did not argue that the outbound dial lists were relevant to the issue of numerosity, because the defendant stipulated that the size of the proposed class was "numerous" under Federal Rule 23(a). *Knutson v. Schwan's*, 2013 WL 3746118, at 5.

8

because the plaintiffs were only seeking certification as to all NutriSystem customers who received calls, it was the District Court's view that the broader, more comprehensive list of all customers who received calls from defendant was not relevant at the class certification phase of the case. *Id.* The matter was then remanded to the assigned Magistrate Judge for further consideration. *Id.* at 9. Upon further consideration, the Magistrate Judge ordered production of a narrow list of autodialed calls the defendant made to individual telephone numbers on behalf of NutriSystem only. However, the Magistrate Judge concluded the names associated with the telephone numbers were not relevant to class certification issues and permitted the defendant to redact the names from the list prior to production. The Magistrate Judge also stated that the broader, more comprehensive outbound dial list, which included all of defendant's customers, including customers of NutriSystem, was not relevant. *Knutson v. Schwan's Home Serv., Inc., No.* 12cv964-GPC(DHB), 2013 WL 11070939, at p. 2 (S.D. Cal. July 23, 2013).

Second, plaintiff cites *Stemple v. QC Holdings, Inc.*, No. 12cv1992-CAB(WVG), 2013 WL 10870906 (S.D. Cal. 2013), a class action alleging that the defendant contacted the named plaintiff on his cellular telephone about twelve times using an artificial or pre-recorded voice to collect a debt owed by a third party. *Id.* at 1. During the pre-certification stage of the case, the plaintiff sought production of all outbound dial lists generated by an autodialer. The defendant argued that the plaintiff's document requests were overly broad because they would require production of non-actionable calls to customers. The District Court acknowledged that the lists could be relevant to ascertaining the number of potential class members and ordered them produced. *Id.* at 2-3. However, on relevance grounds, the District Court allowed the defendant the option to "scrub the list of land line numbers before production." *Id.* at 4. To protect the privacy rights of class members and others whose telephone numbers were on the lists, the District Court ordered the outbound dial lists produced subject to a protective order and limited the plaintiff's use of the information. *Id.* at 4. The District Court also rejected the defendant's argument that production of the requested documents was overly

9

burdensome, because the defendant "did not provide an estimate as to the time or expense that would be required to produce the outbound dial list." *Id.* at 5.

Third, plaintiff cites *Thrasher v. CMRE Financial Services, Inc.*, No. 14cv1540-BEN(NLS), 2015 WL 1138469 (S.D. Cal. 2015), which similarly found that outbound dial lists were relevant to the issues of numerosity and commonality and should be produced even though they included land line numbers. *Id.* at p. 2. The defendant was given the option of "scrubbing" or redacting land line numbers from the lists prior to production. *Id.*

DialAmerica argues in the Joint Motion that the Court should deny plaintiff's request for an order compelling further responses to Document Request Nos. 9, 10, 11, and 13, because they seek discovery that is irrelevant and disproportionate to the needs of the case. According to DialAmerica, the scope of these document requests "vastly exceeds the dispute of the matter . . ." and it would be "unduly burdensome" for DialAmerica to compile the documents and information plaintiff seeks in response to these requests. [Doc. No. 39, at pp. 10-11.] DialAmerica believes that Document Request Nos. 9, 10, 11, and 13 are worded broadly as part of a "fishing expedition" to "develop new claims" not identified in the operative Second Amended Complaint. [Doc. No. 39, at p. 10.] However, as mentioned above, a party opposing discovery must clarify, explain, and support its objections with "competent evidence." *Lofton v. Verizon*, 308 F.R.D. at 281. Here, DialAmerica did not submit any evidence, such as a declaration estimating the time and cost of providing full or partial responses to these requests, so the Court cannot adequately consider or address the issue of proportionality.

Federal Rule 34(b)(1)(A) states that a request for documents "must describe with reasonable particularity each item or category of items to be inspected." Fed.R.Civ.P. 34(b)(1)(A). "'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A)." *In re Asbestos Prod. Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009). *See also Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-650 (10th Cir. 2008)

17cv2073-LAB(KSC)

(indicating that "sweeping requests" should be discouraged and that requests for production should be narrowly tailored "for production of the fewest documents possible").

Generally, a discovery request without any temporal or other reasonable limitations is objectionable on its face as overly broad. *See, e.g., Ehrlich v. Union Pacific R.R. Co.*, 302 F.R.D. 620, 625 (D. Kan. 2014); *Johnson v. Kraft Foods North America, Inc.*, 236 F.R.D. 535, 541-542 (D. Kan. 2006). A document request or interrogatory is also overly broad or unduly burdensome on its face if it: "(1) uses an omnibus term such as 'relating to' or 'concerning,' and (2) applies to a general category or group of documents or a broad range of information." *Moses v. Halstead*, 236 F.R.D. 667, 672 (D. Kan. 2006). On the other hand, a discovery request will not be objectionable as overly broad if it uses an omnibus term to modify "a sufficiently specific type of information or group of documents." *Dauska v. Green Bay Packaging Inc.*, 291 F.R.D. 251, 261-262 (E.D. Wisc. 2013). For example, in a wrongful employment termination action, a document request would be objectionable as overly broad if it sought all documents and e-mails referring or relating to the plaintiff and/or the allegations in the complaint or the defendant's defenses. *Id.* By contrast, a more specific document request in the same case would not be objectionable as overly broad if it sought production of all documents referring or relating to the defendant's decision to eliminate plaintiff's job. *Id.* at 262.

"Despite the overly broad nature of [a discovery request], a party typically has a duty to respond to it to the extent the [discovery request] is not objectionable and can be narrowed to an appropriate scope." *Moses v. Halstead*, 236 F.R.D. at 672. "This rule does not apply, however, and the Court will not compel further response, when inadequate guidance exists to determine the proper scope of the [discovery request]." *Id.* When a discovery request "is overly broad on its face or when relevancy is not readily apparent, the party seeking discovery has the burden to show the relevancy of the request." *Johnson v. Kraft*, 236 F.R.D. at 542 n.20. In addition, "[a] responding party is not generally required to conduct extensive research in order to answer an interrogatory,

11

but a reasonable effort to respond must be made." *Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013).

As DialAmerica contends, Document Request Nos. 9, 10, 11, and 13 are overly broad on their face, because they do not include any reasonable limitations and appear to seek documents and information that exceed the scope of discovery permitted under Rule 26(b)(1). [Doc. No. 39, at pp. 13-17.] These requests use the omnibus terms "any and all," "relating to," and "regarding" to apply to a very broad range of documents or reports. When considered in light of the narrow allegations in the Second Amended Complaint and other information currently available to the Court, the relevance of such a broad range of documents is not readily apparent. Plaintiff has not explained in the Joint Motion why such a broad range of documents and information are being requested when the allegations in the Second Amended Complaint are remarkably narrow by comparison. There is also nothing to indicate plaintiff attempted to narrow the scope of these requests during the meet and confer process. As a result, it is difficult for DialAmerica or the Court to determine what documents should be produced in response to these requests.

More specifically, Document Request Nos. 9, 10, 11, and 13 broadly seek production of reports listing calls made to any person that DialAmerica called on its own behalf and/or on behalf of "any third party." [Doc. No. 39, at pp. 6, 10, 13-14.] As noted above, the Second Amended Complaint only includes allegations that unauthorized, "autodialed" calls were made to plaintiff's cellular telephone by DialAmerica on behalf of American Standard. [Doc. No. 42, at p. 5.] Other than the general allegation that DialAmerica is a telemarketing company that "provides domestic call center services for a variety of industries" [Doc. No. 42, at p. 4], there are no factual allegations in the Second Amended Complaint to indicate the relevance of any calls that DialAmerica may have made on its own behalf or on behalf of any third party other than American Standard. In other words, the allegations in the Second Amended Complaint and plaintiff's conclusory relevance arguments are not enough to justify an order allowing plaintiff to rummage through more than four years' worth of telephone calls made by

DialAmerica on its own behalf or on behalf of any third party other than American Standard. Without more, the Court finds that plaintiff is only entitled to production of documents showing calls made by Dial America on behalf of American Standard during a time period that directly relates to the allegations in the Second Amended Complaint.

As noted above, DialAmerica submitted a copy of its agreement to provide American Standard with an "outbound telemarketing program," and this agreement was fully executed as of May 23, 2016. [Doc. No. 39-2, at p. 5, 7.] The start time for this project was "two weeks after DialAmerica has received the [call] list. . . ." Doc. No. 39-2, at p. 5.] The Second Amended Complaint alleges that unauthorized, "autodialed" calls were made to plaintiff's cellular telephone between July 2017 and August 2017. [Doc. No. 42, at p. 4.] DialAmerica admits that it made one call to plaintiff's cellular telephone number on October 10, 2017. [Doc. No. 35, at p. 3; Doc. No. 35-1, at p. 2.] It therefore appears that the above-referenced agreement between DialAmerica and American Standard would have been in effect at the time of the alleged calls to plaintiff's cellular telephone. There is nothing to indicate the existence of a prior agreement between these parties that would have resulted in calls made by DialAmerica to plaintiff or to any other consumer on behalf of American Standard prior to the May 23, 2016 agreement. Nor does plaintiff explain the relevance of any autodialed calls made prior to the time of this agreement. As a result, the relevance of calls made "since four years prior to the filing of this action" is unclear. [Doc. No. 39, at pp. 6, 13, 14.] Unless there was a prior or different agreement for DialAmerica to provide American Standard with telemarketing services, the relevant time period is a narrow one – May 23, 2016 through October 10, 2017. "Outbound dial lists" would also be relevant through the present day to the extent DialAmerica's agreement to provide American Standard with an "outbound telemarketing program" continued beyond October 10, 2017.

In sum, the Court finds that plaintiff's request for an order compelling defendant to provide further responses to Document Request Nos. 9, 10, 11, and 13 must be GRANTED in part and DENIED in part. Plaintiff's request is GRANTED to the extent

plaintiff seeks an order compelling defendant to produce outbound dial lists for autodialed calls made to cellular telephone numbers on behalf of American Standard for marketing or advertising purposes during the period May 23, 2016 through the present. If DialAmerica is unable to produce an outbound dial list that only includes cellular telephones, it must produce an outbound dial list of all autodialed calls made on behalf of American Standard for marketing or advertising purposes during the period May 23, 2016 through the present. Names and addresses associated with any telephone numbers are not relevant at this time and should be redacted prior to production. Plaintiff's request is DENIED to the extent it seeks an order compelling production of any other documents in response to Document Request Nos. 9, 10, 11, and 13.

### III. *DialAmerica's Telephone Dialing System.*

Plaintiff served defendant with the following document requests that are now at issue in the parties' Joint Motion:

*Document Request No. 21*: "All documents relating to [DialAmerica's] use of an automatic telephone dialing system." [Doc. No. 39, at p. 17.]

*Document Request No. 22*: "All documents relating to [DialAmerica's] use of a predictive dialer." [Doc. No. 39, at p. 21.]

*Document Request No. 29*: "Produce any and all documents describing the means for determining methodology for initiating and invoking the telephone equipment and systems to make outgoing calls since four years prior to the filing of the Complaint in this action." [Doc. No. 39, at p. 23.]

*Document Request No. 30*: "Produce any and all technical manuals, network architecture diagrams, booklets, guidelines, and memoranda regarding telecommunications/dialing systems used since four years prior to the filing of the Complaint in this action." [Doc. No. 39, at p. 24.]

*Document Request No. 31*: "Produce any and all documents indicating whether the telephone used to call plaintiff has the capacity to store telephone numbers to be called (regardless if it was used this way)." [Doc. No. 39, at p. 25.]

/ / /

DialAmerica objected to these requests and did not provide plaintiff with any substantive responses. DialAmerica's objections are that these requests are overly broad and seek documents that are irrelevant. DialAmerica's responses to these requests are deficient under Federal Rule 34(b)(2)(B) and (C), because they include only general, boilerplate objections with no reasons and do not state whether any responsive materials are being withheld based on these objections. Nor do DialAmerica's responses provide any specificity as to the part or parts of the requests that are objectionable. Despite the requirements in Federal Rule 34(b)(B) and (C), DialAmerica did not state in any of its responses whether it would make a partial production. For these reasons alone, the Court finds that plaintiff is entitled to an order requiring DialAmerica to provide further responses to Document Request Nos. 21, 22, 29, 30, and 31.

DialAmerica also contends that Document Request Nos. 21, 22, 29, 30, and 31 are overly burdensome because of the time that would be required to compile the documents and information plaintiff seeks. In conclusory fashion, DialAmerica states that "[t]he time required . . . to obtain the information" would be "unduly burdensone, if not impossible." [Doc. No. 39, at p. 2.] However, as noted above, DialAmerica has the burden to explain, clarify, and support its objections with "competent evidence." *Lofton v. Verizon,* 308 F.R.D. at 281. Yet, DialAmerica did not submit any evidence to substantiate this objection, such as a declaration setting forth an estimate of the time and expense involved in providing full and/or partial responses to plaintiff's requests. As a result, the Court is unable to determine "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1). Nor is the Court able to determine whether a protective order would be appropriate under Rule 26(b)(2)(C) on the ground that plaintiff is able to obtain the requested information in a manner that is "less burdensome," such as the service of narrowly tailored interrogatories on DialAmerica. Fed.R.Civ.P. 26(b)(2)(C)(i).

On the other hand, the Court finds that Document Request Nos. 21, 22, 29, 30, and 31 are overly broad on their face as to time and scope because they seek production of

17cv2073-LAB(KSC)

broad, general categories of documents using the terms "all," "any and all," and "relating to" and beginning four years before the original Complaint was filed in this action. As noted in the previous section of this Order, the relevant time period at issue based on information currently before the Court is a narrow one – May 23, 2016 through the present. Because the requests are worded so broadly, they seek access to documents that undoubtedly exceed the relevance and proportionality standards in Rule 26(b)(1). From the requests alone, it is simply not possible for defendant to determine what documents should be produced.

In the Joint Motion, plaintiff did explain that in response to Document Request Nos. 21, 22, 29, 20, and 31 she simply seeks to discover documents that would identify the capabilities of defendant's dialing system, such as documents that would reveal how the system functions and whether the system qualifies as an ATDS. Citing Title 47, United States Code Section 227, plaintiff correctly contends that documents revealing the features and capabilities of defendant's dialing system are relevant to causes of action brought under the TCPA. [Doc. No. 39, at p. 17.] Plaintiff seeks to discover enough information so that her expert can issue an opinion as to whether DialAmerica's telephone dialing system qualifies as an ATDS under the TCPA. To obtain this information, plaintiff is willing to have its own expert examine the system. Alternatively, plaintiff is willing to assist defendant in identifying responsive documents.

DialAmerica did not directly respond to plaintiff's offer to narrow the scope of Document Request Nos. 21, 22, 29, 30, and 31 or plaintiff's offer to assist in identifying responsive documents. Instead, DialAmerica argues that production of documents "related to the dialing equipment are [un]necessary at this stage of the litigation." [Doc. No. 39, at p. 20.] While documents revealing the functions and features of DialAmerica's dialing equipment may not be needed in connection with the filing of motions related to class certification, the Court notes that the operative Scheduling Order in this case provides that "[f]act and class discovery are not bifurcated" in this case. [Doc. No. 45, at p. 2] The Court also notes that the documents sought in response to

these requests will be relevant to key issues raised in the Second Amended Complaint regardless of whether a class is ultimately certified in this case. Although these requests are somewhat premature because they do not appear relevant to class issues, the Court notes that class discovery should be nearly complete at this point in time, and the parties will soon be focusing on the remainder of fact discovery in the case. Therefore, the Court finds that plaintiff is entitled to an order compelling defendant to provide further responses and to produce a narrow category of documents in response to these requests.

Based on the foregoing, the Court finds that plaintiff's request for an order compelling further responses to Document Request Nos. 21, 22, 29, 30, and 31 must be GRANTED in part and DENIED in part. To the extent plaintiff requests an order compelling production of the following documents, the request is GRANTED: Manuals, diagrams, booklets, guidelines, memoranda, or portions thereof, that reveal the material features and functions of the dialing system that DialAmerica used to provide American Standard with an "outbound telemarketing program" during the relevant time period (*i.e.*, May 23, 2016 to the present) and/or that address: (1) whether DialAmerica has used or uses an "automatic telephone dialing system" and/or a "predictive dialer"; (2) whether the telephone dialing system DialAmerica used to make telephone calls on behalf American Standard has or had the capacity to store telephone numbers; and (3) the methodology used by DialAmerica's telephone dialing system to initiate and invoke outgoing telephone calls on behalf of American Standard. DialAmerica must specifically advise plaintiff in writing if it does not have responsive documents that address any of these topics. If responsive documents do not exist, plaintiff's remedy is other discovery methods, such as a Rule 30(b)(6) deposition or narrowly tailored interrogatories. To the extent Document Request Nos. 21, 22, 29, 30, and 31 seek production of any other documents, plaintiff's request for an order compelling production is DENIED at this time for failure to establish relevance.

/ / /

/ / /

# IV. *Number of Calls by DialAmerica.*

Plaintiff served defendant with the following special interrogatories that are now at issue in the parties' Joint Motion:

> ***Special Interrogatory No. 3:*** "If [DialAmerica] [has] attempted to contact consumers for the purposes of marketing and/or advertising on [DialAmerica's] own behalf and/or any third party at any time since four years prior to the filing of this action to the date of responding to these interrogatories, state when any such attempts began, how the contacts were carried out [i.e. in what form: telephone, in person, email etc.] and dates of all contacts made via an automatic telephone dialing system (hereinafter 'ATDS') and/or prerecorded messages." [Doc. No. 39, at p. 26.]

> ***Special Interrogatory No. 5:*** "State how many telephone numbers [DialAmerica] [has] called, including cellular telephones, landlines, or any other telephone lines, since four years prior to the filing of this action to the date of answering these interrogatories, in [DialAmerica's] attempts to market and/or advertise for or on [DialAmerica's] behalf and/or any third party." [Doc. No. 39, at p. 30.]

> ***Special Interrogatory No. 6:*** "State how many telephone numbers [DialAmerica] [has] called, including cellular telephones, landlines, or any other telephone lines, since four years prior to the filing of this action to the date of answering these interrogatories, in [DialAmerica's] attempts to market and/or advertise for and on [DialAmerica's] behalf and/or any third party using an ATDS." [Doc. No. 39, at p. 33.]

> ***Special Interrogatory No. 7:*** "State how many calls [DialAmerica] [has] made to cellular telephones, mobile telephones, and wireless devices since four years prior to the filing of this action to the date of answering these interrogatories, using an ATDS." [Doc. No. 39, at p. 36.]

Federal Rule of Civil Procedure 33 states that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P. (b)(1)(3). In other words, parties have an obligation to respond to interrogatories to the fullest extent possible. "The grounds for objecting to an interrogatory must be stated with specificity." Fed.R.Civ.P. 33(b)(4). "Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all."

*Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999). For example, objections must explain how an interrogatory is overly broad or unduly burdensome. *Mitchell v. National R.R. Passenger Corp.*, 208 F.R.D. 455, 458 at n. 4 (D.D.C. 2002).

Here, DialAmerica objected to these special interrogatories and did not provide plaintiff with any substantive responses. In other words, Dial America did not respond to these interrogatories to the fullest extent possible. DialAmerica's objections are that these special interrogatories are overly broad and harassing. [Doc. No. 39, at pp. 26, 30, 33, 36, 42, 45.] DialAmerica's responses to these requests are deficient under Federal Rule 33(b)(4), because they include only general, boilerplate objections and do not explain how these interrogatories are overly broad and harassing. For these reasons alone, the Court finds that plaintiff is entitled to an order requiring DialAmerica to provide further responses to Special Interrogatory Nos. 3, 5, 6, and 7.

In the Joint Motion, plaintiff contends that the Court should order DialAmerica to provide further response to these interrogatories, because she has alleged that DialAmerica made marketing calls to her cellular telephone using an ATDS and a pre-recorded message, so she is entitled to discover information about "similar calls." [Doc. No. 39, at p. 26.] According to plaintiff, information about "similar calls" is relevant to class certification issues, and DialAmerica has admitted that it made calls to "similarly situated individuals," but the number of those calls is currently unknown. [Doc. No. 39, at pp. 26, 28.] Obviously, the number of "similar calls" (*i.e.*, autodialed calls made by DialAmerica to cellular telephones on behalf of American Standard for marketing or advertising purposes during the relevant time period) would be relevant to the class certification issue of numerosity as it would be indicative of the number of potential class members. *See, e.g., Stemple v. QC Holdings, Inc.*, 2013 WL 10870906, at 2.

DialAmerica argues in the Joint Motion that "[t]here is no reason that plaintiff needs information on all attempted calls DialAmerica has made in the past four years using an ATDS as that request includes persons that could not be a part of the putative

class." [Doc. No. 29, at p. 29.] As worded, the Court finds that Special Interrogatory Nos. 3, 5, 6, and 7 are overly broad on their face as to time and scope for the same reasons discussed above in connection with plaintiff's document requests. These interrogatories also appear to be somewhat repetitive or duplicative of one another. However, since plaintiff indicated in the Joint Motion that the purpose of these interrogatories is to discover information about "similar calls," the Court finds that plaintiff's request for an order compelling DialAmerica to respond to Special Interrogatory Nos. 3, 5, 6, and 7 must be GRANTED in part and DENIED in part. Plaintiff's request is GRANTED to the extent these interrogatories seek to discover the number of autodialed calls made by DialAmerica on behalf of American Standard as part of any marketing or advertising campaign and the time period(s) when those autodialed calls were made. Plaintiff's request is also GRANTED to the extent DialAmerica is able to determine how many of any such calls were made to cellular telephones. If appropriate under the circumstances set forth in Federal Rule 33(d), DialAmerica has the option to provide this information by producing specifically identified business records. To the extent Special Interrogatory Nos. 3, 5, 6, and 7 seek any other information, plaintiff's request for an order compelling further responses by DialAmerica is DENIED for failure to establish relevance.

*V.* ***Methods for Documenting or Storing Telephone Calls.***

> ***Special Interrogatory No. 8***: "Describe any system, scheme, technique, practice, procedure, or method that [DialAmerica] maintain[s], operate[s], or employ[s] to record, memorialize, or otherwise document telephone calls between [DialAmerica] and individuals." [Doc. No. 39, at p. 39.]

DialAmerica objected to Special Interrogatory No. 8 as overly broad. However, defendant did state as follows: "Without waiving these objections, please see DA Shuckett 001." [Doc. No. 39, at p. 39.] In the Joint Motion, plaintiff simply repeats arguments made in connection with prior discovery requests at issue and does not specifically address why DialAmerica's response to this particular interrogatory is

1   inadequate. Under the circumstances set forth in Federal Rule 33(d), a party may respond
2   to an interrogatory by specifying a business record or records. Fed.R.Civ.P. 33(d).
3   Although DialAmerica's response is somewhat ambiguous, it does appear that
4   DialAmerica's position is that plaintiff is able to determine how DialAmerica records,
5   stores, memorializes, or documents telephone calls by referencing a particular document
6   which presumably has been produced in the litigation and labeled "DA Shuckett 001."
7   [Doc. No. 39, at p. 39.] In other words, without more, it appears that DialAmerica
8   provided an adequate response to this request by referencing a business record that has
9   been produced in this litigation as permitted under Federal Rule 33(d). Under these
10  circumstances, the Court finds that plaintiff's request for an order compelling
11  DialAmerica to provide a further response to Special Interrogatory No. 8 must be
12  DENIED for failure to establish that DialAmerica provided an inadequate response to this
13  interrogatory.

14  ## VI.    *Telephone Numbers Used by DialAmerica to Make Calls.*

15  ***Special Interrogatory No. 11:*** "Identify all local and long distance
16  telephone numbers used by [DialAmerica] to make outgoing calls since four
    years prior to the filing of this action to the date of answering these
17  interrogatories." [Doc. No. 39, at p. 42.]

18

19      Defendant objected to Interrogatory No. 11 as overly broad but stated that
20  "DialAmerica uses business numbers to place calls for its business purposes including its
21  number (800)531-3131." [Doc. No. 39, at p. 42.] In the Second Amended Complaint,
22  plaintiff alleges she received repeated marketing calls from DialAmerica to her cellular
23  telephone between July 2017 and August 2017 from telephone numbers that "always
24  started with 619-340-XXXX where the last four numbers always changed." [Doc. No.
25  42, at p. 4.] Plaintiff seeks an order compelling DialAmerica to disclose "all local and
26  long distance telephone numbers used by [DialAmerica] to make outgoing calls" so she
27  can cross-reference that list with the calls she received in order to determine the exact
28  number of calls she received from DialAmerica. [Doc. No. 39, at p. 42.]

17cv2073-LAB(KSC)

Although Interrogatory No. 11 is in some respects objectionable as overly broad, some of the information sought in response to this interrogatory is obviously relevant based on the allegations in the Second Amended Complaint. It is also apparent that DialAmerica did not respond to this interrogatory to the fullest extent possible. Accordingly, the Court finds that plaintiff's request for an order compelling DialAmerica to provide a further response to Interrogatory No. 11 must be GRANTED. Plaintiff is entitled to discover each and every telephone number DialAmerica used to make autodialed marketing or advertising calls to consumers on behalf of American Standard during the period May 23, 2016 to the present. In addition, plaintiff is entitled to discover whether DialAmerica used the telephone numbers listed on pages 4 and 5 of the Second Amended Complaint for marketing or advertising purposes or for any other purpose during the period May 23, 2016 to the present. [Doc. No. 42, at pp. 4-5.] Plaintiff's request for an order compelling DialAmerica to disclose any other information in response to Interrogatory No. 11 is DENIED for failure to establish relevance.

## VII.   *DialAmerica's Marketing and Advertising Policies and Procedures.*

> ***Special Interrogatory No. 16***: "State precisely all of [DialAmerica's] policies and procedures for marketing and/or advertising since four years prior to the filing of this action to the date of answering these interrogatories." [Doc. No. 39, at p. 45.]

DialAmerica objected to Special Interrogatory No. 16 as overly broad (*i.e.*, that "the scope vastly exceeds the dispute in this matter"). [Doc. No. 39, at p. 45.] In the Joint Motion, DialAmerica also argues that the information sought in response to this request is unlikely to substantiate class allegations. [Doc. No. 39, at p. 47.] As with all of the other discovery requests at issue in the parties' Joint Motion, Special Interrogatory No. 16 is overly broad on its face as to time and scope. In the Joint Motion, plaintiff argues in conclusory fashion that "[t]he information requested is clearly relevant to determine class issues of numerosity, commonality, ascertainability, and predominance." [Doc. No. 39, at p. 45.] However, without more, the relevance of the broad range of

information requested is not obvious, and the Court is unable to determine the proper scope of this interrogatory. In other words, Special Interrogatory No. 16 does not meet the "reasonable particularity" standard in Federal Rule 34(b)(1)(A), and plaintiff also did not met its burden of establishing the relevance of the information requested in this interrogatory.

The Court notes that DialAmerica has already disclosed some policies and procedures that are obviously relevant to the dispute between the parties. For example, DialAmerica disclosed its "Do-Not-Call Policy." [Doc. No. 35-2, at p. 2.] DialAmerica also disclosed its written agreement to provide American Standard with "an outbound telemarketing program," which includes the procedures to be followed by DialAmerica and American Standard to implement the program. [Doc. No. 35-3, at pp. 2-4; Doc. No. 39-2, at pp. 5-7.] Additional information related to DialAmerica's internal policies and procedures is included in the Declaration of DialAmerica's General Counsel, which was submitted in support of arguments made by DialAmerica in the parties' Joint Motion. [Doc. No. 39-2, at pp. 2-4.] To the extent plaintiff believes that other policies and procedures are relevant to class or other issues in the case, it must make more specific requests for this information.

Based on the foregoing, the Court finds that plaintiff's request for an order compelling DialAmerica to provide a further response to Special Interrogatory No. 16 must be DENIED. However, this denial is without prejudice to plaintiff serving DialAmerica with new, more specific requests for disclosure of relevant policies and procedures.

## VIII. *DialAmerica's Trade Secret Claims.*

In response to all of the discovery requests now at issue in the parties' Joint Motion, except for Special Interrogatory No. 11, DialAmerica has objected to the disclosure of all responsive documents and information based on a claim that its data and dialing system are protectable as trade secrets. [Doc. No. 39, at pp. 6-50.] In support of this claim, DialAmerica submitted a Declaration by its General Counsel detailing

DialAmerica's efforts to maintain the secrecy of its data and proprietary dialing system. [Doc. No. 39-2, at pp. 3-7 (Kaya Decl.).] This Declaration also states as follows: "If the [data or] dialing system [is] disclosed to unauthorized parties, the information could be used by a competing or non-competing business to market goods or services to DialAmerica's detriment." [Doc. No. 39-2, at p. 3.]

Under Federal Rule 26(c)(1), this Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way. . . ." Fed.R.Civ.P. 26(c)(1)(G). "Where trade secrets or other confidential commercial information is involved, the court will balance the risk of disclosure to competitors against the risk that a protective order will impair prosecution or defense of the claims." *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007).

As outlined above, plaintiff has established the relevance and importance of at least a portion of the documents and information sought in response to the written discovery requests at issue in the parties' Joint Motion. Although the discovery requests at issue in the parties' Joint Motion were worded so broadly as to seek almost unlimited access to DialAmerica's confidential business records, including documents and information that are clearly protectable as trade secrets, the Court has considerably narrowed the scope of the requests for reasons of relevance and proportionality. In narrowing and limiting the scope of these requests, the Court has also considered DialAmerica's interest in protecting the confidentiality of its data and other trade secrets. However, it is apparent that some documents and information that DialAmerica considers to be confidential and protectable as trade secrets must be disclosed for the parties to reach a fair resolution of the case.

Given the relevance and importance of the documents and information that must be produced as a result of this Order, the Court finds that DialAmerica's confidential commercial information and trade secrets can be adequately protected by the entry of a

suitable protective order. Recently, the parties filed a Joint Motion for Protective Order and a proposed order governing the exchange of confidential documents and information between the parties for the purposes of this case. The Court expects that the parties' proposed protective order will be in effect at the time this Order is issued. Therefore, any documents or information that DialAmerica must disclose in order to comply with this Order may be designated confidential or highly confidential as appropriate and produced subject to the protective order.

### *Conclusion*

For the reasons outlined more fully above, plaintiff's request for an order compelling further responses to certain written discovery requests is GRANTED in part and DENIED in part as follows:

1.    In response to plaintiff's Document Request Nos. 9, 10, 11, and 13, DialAmerica shall produce outbound dial lists for autodialed calls made to cellular telephone numbers on behalf of American Standard for marketing or advertising purposes during the period May 23, 2016 through the present. If DialAmerica is unable to produce an outbound dial list that only includes autodialed calls to cellular telephones, it must produce an outbound dial list of all autodialed calls made on behalf of American Standard for marketing or advertising purposes during the period May 23, 2016 through the present. Names and addresses associated with any telephone numbers are not relevant at this time and should be redacted prior to production. Plaintiff's request for an order compelling production of any other documents in response to Document Request Nos. 9, 10, 11, and 13 is DENIED for failure to establish relevance.

2.    In response to plaintiff's Document Request Nos. 21, 22, 29, 30, and 31, DialAmerica shall produce manuals, diagrams, booklets, guidelines, memoranda, or portions thereof, that reveal the material features and functions of the dialing system that DialAmerica used to provide American Standard with an "outbound telemarketing program" during the relevant time period (*i.e.*, May 23, 2016 to the present) and/or that address: (1) whether DialAmerica has used or uses an "automatic telephone dialing

17cv2073-LAB(KSC)

system" and/or a "predictive dialer"; (2) whether the telephone dialing system DialAmerica used to make telephone calls on behalf American Standard has or had the capacity to store telephone numbers; and (3) the methodology used by DialAmerica's telephone dialing system to initiate and invoke outgoing telephone calls on behalf of American Standard. DialAmerica must specifically advise plaintiff in writing if it does not have responsive documents that address any of these topics. Plaintiff's request for an order compelling production of any other documents in response to Document Request Nos. 21, 22, 29, 30, and 31 is DENIED for failure to establish relevance.

3. In response to plaintiff's Special Interrogatory Nos. 3, 5, 6, and 7, DialAmerica shall disclose the number of autodialed calls it made on behalf of American Standard as part of any marketing or advertising campaign and the time period(s) when those autodialed calls were made. If possible, defendant shall also disclose how many of any such calls were made to cellular telephones. If appropriate under the circumstances set forth in Federal Rule 33(d), DialAmerica has the option to provide this information by producing specifically identified business records. Plaintiff's request for an order compelling DialAmerica to disclose any other information in response to Special Interrogatory Nos. 3, 5, 6, and 7 is DENIED for failure to establish relevance.

4. Plaintiff's request for an order compelling DialAmerica to provide a further response to Special Interrogatory No. 8 is DENIED for failure to establish that DialAmerica failed to provide an adequate response to this interrogatory.

5. In response to plaintiff's Special Interrogatory No. 11, DialAmerica shall disclose each and every telephone number it used to make autodialed marketing or advertising calls to consumers on behalf of American Standard during the period May 23, 2016 to the present. DialAmerica shall also disclose whether it used any of the telephone numbers listed on pages 4 and 5 of the Second Amended Complaint to make calls for marketing or advertising purposes or for any other purpose during the period May 23, 2016 to the present. [Doc. No. 42, at pp. 4-5.] Plaintiff's request for an order compelling

DialAmerica to provide any other information in response to Special Interrogatory No. 11 is DENIED for failure to establish relevancy.

6.     Plaintiff's request for an order compelling DialAmerica to provide a further response to Special Interrogatory No. 16 is DENIED for failure to establish relevance and/or to meet the "reasonable particularity" standard in Federal Rule 34(b)(1)(A). However, this denial is without prejudice to plaintiff serving DialAmerica with new, more specific requests for disclosure of relevant policies and procedures.

8.     ***No later than October 5, 2018***, DialAmerica shall fully and completely comply with this Order by producing documents and providing further responses to interrogatories as directed herein.

IT IS SO ORDERED.

Dated: September ⁨7⁩ , 2018

Hon. Karen S. Crawford
United States Magistrate Judge

17cv2073-LAB(KSC)