# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIEL SHUCKETT, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>DIALAMERICA Marketing Inc.,<br><br>Defendant. | CASE NO. 17cv2073-LAB (KSC)<br><br>**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS [Dkts. 70, 71]** |

From July through October 2017, Plaintiff Ariel Shuckett alleges that she received a series of phone calls from two telemarketing companies—DialAmerica and ProspectsDM[1]—working on behalf of co-defendant American Standard. These phone calls, in Shuckett's view, violated the Telephone Consumer Protection Act ("TCPA"). Presently before the Court are motions to dismiss by DialAmerica, who argues that Shuckett has no standing to sue because she did not answer DialAmerica's sole phone call, and America Standard, who argues it cannot be vicariously liable because its contract with ProspectsDM required the telemarketing company to comply with the TCPA. For the reasons below, both motions are **DENIED.**

///

---

[1] Prospects DM, the company that made the majority of the calls to Plaintiff's cell phone, has settled the claims against it. Dkt. 90.

- 1 -

## 1. DialAmerica's Motion to Dismiss for Lack of Standing

DialAmerica's motion to dismiss presents a single, straightforward question of law: whether receiving a single missed call from a telemarketer constitutes a concrete injury that gives rise to standing under *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016). The Court concludes that it does, and therefore finds that Shuckett has standing to pursue her claims against DialAmerica.

"Because standing . . . pertain[s] to federal courts' subject matter jurisdiction, [it is] properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Here, DialAmerica has made a factual attack. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* "The court need not presume the truthfulness of the plaintiff's allegations." *Id.* "The plaintiff . . . bears the burden of proof to establish standing." *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013).

Shuckett's allegations against DialAmerica—a company that contracts with and makes telemarketing calls on behalf of co-defendant American Standard—revolve around a single call made by DialAmerica on October 10, 2017 at 3:02 P.M.[2] Shuckett did not answer this phone call, as evidenced by DialAmerica records indicating that the call had zero seconds of "talk time." *See* Jannicelli Decl., Dkt. 60-2, at ¶ 5. Indeed, Shuckett's

---

[2] Shuckett's Third Amended Complaint notes that she received approximately 40 calls from "Defendants" between July and October 2017. *See* TAC, Dkt. 67, at ¶ 20. But the complaint acknowledges that most of these calls were from a separate co-Defendant that has now settled, ProspectsDM. The complaint identifies only a single instance in which the caller was DialAmerica: the call on October 10, 2017. *Id.* at ¶ 31.

own cell phone "talk activity" records show that she did not talk to anyone at 3:02 P.M., DialAmerica or otherwise. *See* Garrod Decl., Dkt. 70-3, Ex. E at 52. Nonetheless, Shuckett alleges that this call violated the TCPA, caused her nuisance, and invaded her privacy.

In *Spokeo*, the Supreme Court held that a defendant's violation of a federal statute is insufficient by itself to confer standing on a plaintiff—instead, the plaintiff must show that he or she suffered an actual, concrete injury that is traceable to the conduct of the defendant. *See Spokeo*, 136 S.Ct. at 1550. While answering an unsolicited and unlawful telemarketing call is a minor injury, it's an injury nonetheless, and courts throughout the Ninth Circuit have routinely held that receiving such a call confers standing under *Spokeo*. *See, e.g., Lemieux v. Lender Processing Ctr.*, 2017 WL 1166430, at *4 (S.D. Cal. 2017); *Juarez v. Citibank, N.A.*, 2016 WL 4547914, at *3 (N.D. Cal. 2016). This conclusion makes sense because a person who is forced to answer and talk with a telemarketer (automated or not) is required to expend time and energy that could otherwise be put toward something more productive. Indeed, these conversations might even count against a plaintiff's phone plan "minutes," thereby leading to direct, if minimal, financial harm to the plaintiff.

Conceding that a single call can give rise to standing, DialAmerica instead argues that because Shuckett did not pick up the call, she does not have standing. In DialAmerica's view, if there was no "talk time," then Shuckett could not have suffered a concrete injury. To be sure, this argument has certain administrative appeal—if you pick up the phone, you've suffered an injury; if you don't pick up the phone, you haven't. But as tidy as this rule might seem, it's inconsistent with case law suggesting that even *de minimis* harm confers standing. In *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017), for example, the Ninth Circuit held that the receipt of a text message gave rise to standing under the TCPA, noting that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients." *Id.* at 1043. There is no meaningful difference between an unanswered

phone call and a text message. Neither requires an outlay of time or energy, but both "disturb the solitude of their recipients." *Id.* The invasion of privacy caused by unwanted telemarketing calls is not diminished simply because a plaintiff chooses to decline the call.

Had the call gone entirely unnoticed, perhaps this would be a different case. But Shuckett does not say that the call went unnoticed—her declaration states that it was "unanswered" but caused her "nuisance and invaded [her] privacy." Dkt. 74-2. Further, DialAmerica's contention that "[Shuckett] did not know that DialAmerica had dialed her cell number . . . until DialAmerica's counsel voluntarily informed Plaintiff's counsel of that fact" is supported by nothing more than a self-serving declaration. While it appears undisputed that Shuckett did not pick up the call, there is no evidence that she was entirely unaware of it.

The Court is not blind to the parties' respective roles in this case. ProspectsDM allegedly made 40 phone calls to Shuckett on behalf of American Standard over the course of several months. DialAmerica simply had the bad fortune of making a single, unsolicited call to Shuckett on the tail end of that barrage. But at the end of the day, DialAmerica admits it made that one call, so Shuckett has standing to pursue her claims against it under the TCPA, regardless of whether she chose to pick up the phone or not.[3] DialAmerica's motion is **DENIED**.[4]

### 2. American Standard's Motion to Dismiss

American Standard, the company for which DialAmerica and ProspectsDM made the telemarketing calls, moves to dismiss the case in its entirety under Rule 12(b)(6).

---

[3] DialAmerica claims its actions do not violate the TCPA because it does not robodial or use prerecorded messages in its telemarketing calls. If that's true, this may be an easy case for summary judgment. But these are factual determinations to be made once the parties have had an opportunity to engage in discovery, and they are beyond the scope of a motion to dismiss.

[4] In light of this, DialAmerica's motion to strike Shuckett's class allegations and request for injunctive relief must necessarily be denied as well.

Specifically, American Standard argues that it cannot be held vicariously liable for unlawful calls made by PropsectsDM because its contract required ProspectsDM to comply with the TCPA. Any breach of the TCPA, in American Standard's view, was therefore outside the scope of the agency relationship. Shuckett argues that this Court has no authority to consider the contract at the motion to dismiss stage because the contract is not attached to the complaint and cannot be incorporated by reference. The Court finds that the contract may be incorporated by reference but that it does not support dismissal at this early stage of the litigation.

### a. Incorporation by Reference

In ruling on a 12(b)(6) motion, "a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). However, in order to "prevent[] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims," a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018)

The parties dispute whether the contract between American Standard and ProspectsDM may be incorporated by reference into Shuckett's complaint and, thus, whether the Court may consider the contract in ruling on America Standard's motion to dismiss. It's true that Shuckett's complaint doesn't explicitly reference the contract, but it makes other references to the relationship between America Standard and ProspectsDM that implicate the document. The complaint, for example, references the "extremely close" relationship between the Defendants and notes that "American Standard exercises general supervisory power over [ProspectsDM's] calling campaign." TAC, Dkt. 67, at ¶ 15. These general supervisory powers would likely be reflected in the terms of the parties' contract, even though, as discussed below, the contract is by no means dispositive of whether an agency relationship existed.

The Ninth Circuit's decision in *Coto Settlement v. Eisenberg*, 593 F.3d 1031 (9th Cir. 2010), is instructive. In that case, the court noted that although plaintiff's complaint "does not explicitly refer to the Billing Agreement [between the parties'], . . . [w]hether or not [defendant] converted the reserves it received from the [plaintiff's] customers . . . depends in large part on its authorization to do so and whether it asserted ownership over the funds at that time—suggesting that the Billing Agreement is integral to the Amended Complaint." *Id* at 1038. The same is true here. Whether or not ProspectsDM was permitted to do (or restricted from doing) certain tasks "depends in large part on its authorization to do so" under the parties' contract. *Id.* Accordingly, the Court finds that the contract may be incorporated by reference into Shuckett's complaint.[5]

### b. Agency Relationship

Viewed in light of the contract, American Standard argues that Shuckett cannot plausibly show that American Standard is vicariously liable for the unlawful calls of ProspectsDM. Specifically, American Standard points to language in the contract requiring that ProspectsDM follow the TCPA in making telemarketing calls as evidence that any breach of the TCPA was outside the scope of their agency relationship. *See* Buete Decl., Dkt. 71-2, Ex. A. Even if the Court were to accept that as true, the text of the contract is not the be-all and end-all, and courts in this circuit have routinely recognized that whether an agency relationship exists "generally is a question of fact . . . [that is] better suited to a motion for summary judgment than a motion to dismiss." *Bottoni v. Sallie Mae, Inc.*, 2011 WL 2293226, at *6 (N.D. Cal. 2011). Indeed, in TCPA cases, courts recognize at least three different "bedrock theories of agency, actual authority, apparent authority, and ratification." *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, 2018 WL 3707283, at *3 (N.D. Cal. 2018) (citing *Jones v. Royal Admin. Servs., Inc.*, 887

---

[5] Shuckett notes that she "cannot currently stipulate to [the contract's] authenticity." Opposition, Dkt. 76, at 5. This does not raise a genuine dispute as to the document's authenticity, which appears amply supported by the declaration of Robert Buete. Dkt. 71-2.

F.3d 443, 449 (9th Cir. 2018)). The contract might be dispositive as to whether ProspectsDM had actual authority to act on behalf of American Standard. But it says nothing, for example, about whether the parties' course of dealing constituted ratification of ProspectsDM's unlawful behavior.

At this stage of the case, the Court must accept the allegations in Shuckett's complaint in the light most favorable to her, and Shuckett has plausibly alleged that American Standard exerted some degree of control over ProspectsDM's actions. *See* TAC, Dkt. 67, at ¶ 15. American Standard may be able to disprove those allegations at summary judgment, but at this point the Court cannot conclude as a matter of law that American Standard is not vicariously liable for ProspectsDM's (or DialAmerica's) unlawful calls.[6] American Standard's motion is **DENIED.**

### 3. Conclusion

For the reasons above, DialAmerica's and American Standard's motions to dismiss are **DENIED**. Dkts. 70, 71.

**IT IS SO ORDERED**.

Dated: February 22, 2019

*Larry A. Burns*
_____
**HONORABLE LARRY ALAN BURNS**
Chief United States District Judge

---

[6] This conclusion is consistent with other district courts considering the same issue. *See, e.g., In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1258 (S.D. Cal. 2012); *Kramer v. Autobytel*, 759 F.Supp.2d 1165, 1172 (N.D. Cal. 2010); *Kazemi v. Payless Shoesource*, 2010 WL 963225, at *3 (N.D. Cal. 2010).